UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

GUADALUPE HERRERA, individually and
as personal representative for the estate of
Oscar Herrera, deceased,

    Plaintiff,

        v.

SCOTT HODSHIRE, Hillsdale County
Sheriff, in his official capacity, and Deputy
ADAM BURLEW, in his individual capacity,

    Defendants.

Case No. 21-_____

Judge:

Magistrate:

---

Robert. W. Palmer (P31704)
Robin B. Wagner (P79408)
Pitt, McGehee, Palmer & Rivers, PC
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
rpalmer@pittlawpc.com
rwagner@pittlawpc.com

Antonio M. Romanucci
Ian P. Fallon
321 N. Clark St., Ste. 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
ifallon@rblaw.net

---

## COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF AND JURY DEMAND

### I.    NATURE OF ACTION

Oscar Herrera was shot and killed at 7:42 p.m. on April 28, 2021 outside his home at 6591 South Edon Road, Reading Township, Michigan. His killer, Defendant Deputy ADAM BURLEW, initially responded to Mr. Herrera's home for an alleged municipal ordinance violation of not controlling his dog on his property, punishable by a fine of no greater than $500 or 90 days imprisonment. No dog was outside the home, let alone uncontrolled, when Deputy BURLEW arrived. In fact, Deputy BURLEW encountered a home that was quiet, peaceful and

very much controlled. Mr. Herrera and his 13-year-old dog, Rico, were inside the South Edon Road home when Deputy BURLEW appeared.

There was no evidence that Oscar or Rico posed any threat of harm to the public that night when Deputy BURLEW responded to the home. Despite Oscar having Rico controlled within his home that night when Deputy BURLEW arrived, both Oscar and Rico were dead 13 minutes after Deputy BURLEW entered the property. Deputy BURLEW sentenced Oscar to death for a perceived municipal ordinance violation, despite the fact that there was no evidence that any such violation was occurring.

Mr. Herrera's mother, Plaintiff, GUADALUPE HERRERA, brings this suit seeking damages and other relief arising from Defendants' unconstitutionally excessive force, failure to provide medical care, assault and battery, and gross negligence in ending her only son's life. Plaintiff, through her attorneys, Romanucci & Blandin, LLC; and Pitt, McGehee, Palmer, Bonanni & Rivers, presents her Complaint against defendants and states as follows:

## II.    PARTIES

1.      At the time of his death on April 28, 2021, decedent, OSCAR HERRERA, was 32 years old, a citizen of the United States and a resident of Hillsdale County, Michigan.

2.      Plaintiff, GUADALUPE HERRERA, is a resident of Cook County, Illinois and is the mother of OSCAR HERRERA. Ms. Herrera sues in both her individual capacity and as Personal Representative for the Estate of Oscar Herrera.

3.      On July 13, 2021, Plaintiff GUADALUPE HERRERA was appointed as the Personal Representative for the Estate of Oscar Herrera by the County of Hillsdale, Michigan Probate Court.

4.      Plaintiff seeks both survival and wrongful death damages under federal and state law.

5.      Defendant SCOTT HODSHIRE, Sheriff of Hillsdale County, is an official duly elected under the laws of the State of Michigan and at all times material to the subject of this lawsuit resided and worked in the County of Hillsdale, Michigan.

6.      Defendant Deputy ADAM BURLEW is a sworn officer of the Hillsdale County Sheriff's department and at all times material to the subject of this lawsuit worked in the County of Hillsdale, Michigan, where the facts alleged below occurred.

### III.    JURISDICTION AND VENUE

7.      The instant action arises under 42 U.S.C. § 1983 and alleges violations of Plaintiff's rights under the Fourth Amendment to be free from excessive force in the seizure of his person; therefore, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

8.      Plaintiff also brings claims arising from the same core operative facts under the common law and statutes of Michigan; therefore, supplemental jurisdiction is also proper pursuant to 28 U.S.C. § 1391.

9.      The events alleged herein all transpired in the Western District of Michigan; therefore, venue is proper pursuant to 28 U.S.C. § 1391.

### IV.    ALLEGATIONS COMMON TO ALL COUNTS

10.     This cause of action arises out of the shooting death of Oscar Herrera on Wednesday, April 28, 2021  at approximately 7:43 p.m. outside of his home at 6591 South Edon Road, Reading Township, Michigan.

11.     Thirteen minutes before he opens fire on Mr. Herrera, Defendant BURLEW speaks with Mr. Herrera's neighbor, who complains that Oscar's thirteen-year-old dog, Rico, is at large.

12.     Mr. Herrera's neighbor informs BURLEW that he had felt threatened by Rico in the past, and that the dog had displayed "very aggressive" behavior.

13.     Pursuant to Hillsdale County Animal Control and Protection Ordinance No. 1, Article 2, an "animal at large" is "unrestrained wandering or roaming of any animal on a public way or on property not owned or leased by its owner."[1]

14.     Pursuant to Article 15 of the Ordinance, an individual suspected of having an animal at large may be issued a citation, can be found guilty of a misdemeanor, fined $50-$500, imprisoned for no more than 90 days, and/or sentenced to perform community service.

15.     At 7:35 p.m.[2] on April 28, 2021, Deputy BURLEW arrives at Mr. Herrera's residence to find no animal at large.

16.     Upon information and belief, Rico is in the home with Oscar, restrained, not wandering, and not roaming.

17.     Nevertheless, after roaming around Mr. Herrera's property, Deputy BURLEW knocks on the front door at 7:36 p.m., and receives no response.

18.     BURLEW leaves the sidewalk in front of Mr. Herrera's home, and walks across Mr. Herrera's yard to the back door where he knocks again at 7:37 p.m.

19.     At this time, with the back door closed, no dog on the loose, and a contained scene, Deputy BURLEW hears Rico barking inside the home.

---

[1] https://www.co.hillsdale.mi.us/images/boc/Resolutions/Hillsdale%20County%20Animal%20Ordinance.pdf
[2] These factual allegations are derived from heavily edited, redacted, and manipulated body worn camera video and audio footage produced by the Michigan State Police in response to Freedom of Information Act requests. Plaintiff reserves the right to amend these factual allegations when unedited and unredacted footage is produced in discovery.

20.    He continues to wander around the property, and returns to the back door.

21.    At 7:38 p.m., Oscar opens the door and stands in the doorway.

22.    He is wearing jeans and no shirt, and the dog he was accused of being unable to contain is safely in the house.

23.    In moments, Rico pushes past Oscar and approaches Deputy BURLEW, who turns and runs away. Oscar follows and tries to contain Rico.

24.    Before he can do so, Deputy BURLEW fires the first six bullets from his gun, striking Rico and screaming at Oscar "Back up! Get on the ground now! On the ground! You get on the ground right fucking now!"

25.    Oscar immediately complies; from the ground he asks "Why did you shoot my dog?"

26.    Deputy BURLEW responds, "Just stay right the fuck there."

27.    Rico runs off into the distance, lies down in the grass and, upon information and belief, dies.

28.    Oscar stands up, takes several steps towards Deputy BURLEW and asks "are you going to shoot me?"

29.    Oscar then walks away from Deputy BURLEW, who says "stop right there, sir, you stop right there, just stay right here," while pointing at Oscar with a cannister of chemical irritant in his left hand.

30.    Oscar runs his empty hands through his hair and begins to cry, whimpering "you shot my dog, bro."

31.    Oscar begins to walk towards Rico and away from Deputy BURLEW, who commands "you stay right there," to which Oscar responds "I'm not going to stay right there, shoot me, shoot me!"

32.    Deputy BURLEW responds, "I'm not going to shoot you."

33.    Oscar then shouts into the air, "You fucking shot my fucking dog, you killed him, you fucking killed him," and then steps toward Deputy BURLEW.

34.    At 7:40:17 p.m., Deputy BURLEW draws a conducted electrical weapon (or C.E.W., or "Taser"), points it at Oscar, prepares it for discharge and says, "Stop right there or you're going to get Tased."

35.    At this time, a red dot from the Taser appears on Oscar's torso, and he appears within 5 feet of Deputy BURLEW's outstretched hand and Taser.

36.    In response to the brandishing of the Taser, Oscar retreats and cries "You fucking shot everything that I fucking had," to which Deputy BURLEW replies, "well your dog bit me and that's why it got shot!"

37.    Oscar steps toward Deputy BURLEW, who says "Get on the ground right now, stop this shit," while continuing to point the Taser at him.

38.    At 7:40 p.m., Oscar walks back over to Rico's body, begins to cry, and drops to his knees.

39.    He kneels over Rico and embraces the dog.

40.    Oscar, still on his knees, asks Deputy BURLEW to call an ambulance.

41.    Deputy BURLEW says "do not come near me, you stay right there."

42.    Oscar cries "the state boys already fucking shot my other dog."

43.     Deputy BURLEW taunts, "well maybe you should keep your dogs under control, I'm sorry about what's happened here, I didn't want this."

44.     At 7:41 p.m., Oscar says "look at him, look at him, he's fucking dead."

45.     Deputy BURLEW says, "stay right there."

46.     Oscar asks "why'd you get called?"

47.     Deputy BURLEW replies that he was called because a dog was at large and that Rico "was not contained" on Oscar's property. He then states "I just wanted to talk to you about that didn't want anything exciting going on."

48.     Oscar replies, "you killed my dog, bro."

49.     Deputy BURLEW apologizes.

50.     Oscar informs BURLEW that he killed his "best friend."

51.     Oscar takes a step towards BURLEW, who screams "stay right – don't move! I've had enough for one day!"

52.     Oscar then turns around and walks back over to Rico's position on the ground.

53.     For the next 35 seconds, Oscar is silent and stands over Rico.

54.     During these 35 seconds, Deputy BURLEW is silent and keeps his Taser trained on Oscar.

55.     At 7:42:52 p.m., and while approximately twenty feet away from Deputy BURLEW, Oscar takes two steps towards Deputy BURLEW, and places his hands in front of his stomach.

56.     Despite having had his Taser pointed at Mr. Herrera for over two-and-a-half minutes, Deputy BURLEW, then immediately draws his Hillsdale County Sheriff issued firearm, points it at Oscar and discharges six bullets in his direction.

57.     Three bullets pierce his body in the head, chest, upper back and forearm.

58.     Oscar then falls face-down on the ground.

59.     At 7:43:02 p.m., Deputy BURLEW places his hand over his body worn camera for the first time.

60.     At 7:43:11 p.m., Deputy BURLEW places his hand over his body worn camera for the second time, and walks about the scene of the shooting.

61.     At 7:43:20 p.m., Deputy BURLEW says over radio for the first time "additional shots fired, one suspect down, need additional units here right away, please."

62.     At 7:44:03 p.m., Deputy BURLEW reloads his firearm.

63.     At 7:44:03 p.m., Deputy BURLEW places his hand over his body worn camera for the third time.

64.     At 7:46:04 p.m., a paramedic arrives and approaches Oscar to render aid.

65.     At that time, Deputy BURLEW stops the paramedic and says "careful, careful, he's got a knife", when Oscar was unresponsive, yet had a pulse.

66.     At 7:46:13  p.m., Reading Police Chief Stolberg arrives, and Deputy BURLEW tells Stolberg "he's got a knife underneath him."

67.     Chief Stolberg then screams at Oscar, who is, upon information and belief, nonresponsive, "show me your hands, show me your hands!"

68.     At 7:46:52, Chief Stolberg then says "he's not moving."

69.     At 7:47:04, more than four minutes after Oscar was shot, paramedics are allowed to render aid to Mr. Herrera.

70.     Paramedics attempt to render lifesaving treatment by rolling Oscar onto his back.

71.     After Oscar was rolled onto his back, a paramedic observes a black, folding knife, flat on the ground, with the blade in a closed or folded position.

72.     Chief Stolberg picks up the knife from the ground immediately after the paramedic observes it.

73.     Chief Stolberg picks up the knife, inserts it into a black vinyl glove, and places it at the base of a nearby tree.

74.     The paramedic does not see anyone other than Chief Stolberg touch the knife.

75.     No photograph was taken of the knife where it recovered.

76.     At no time did Deputy BURLEW attempt to render medical aid or assistance to Oscar.

77.     At 7:48 p.m., a paramedic notes that Oscar takes one agonal breath and moves his head.

78.     At 7:49 p.m., a paramedic detects a carotid pulse in Oscar.

79.     Thereafter, Deputy BURLEW walks over to where Mr. Herrera is lying, and another officer or paramedic states "start bagging him."

80.     Thereafter, at 7:49:13, an unidentified officer informs Deputy BURLEW that he is placing an item "by the tree."

81.     Deputy BURLEW then replies, "ok, make a note."

82.     Deputy BURLEW informs an officer that Oscar was double checked and was unresponsive, and that a knife was found underneath Oscar and was placed in a black glove at the base of a tree.

83.     Oscar was pronounced deceased at the scene at 8:00 p.m. over telephone by Dr. Brian Kern.

84.     His Cause of Death was attributed to multiple gunshot wounds.

85.     The manner of death was ruled a homicide.

86.     Some time after the Oscar Herrera died on April 28, 2021, the Michigan State Police ("MSP") were summoned to Mr. Herrera's home to process the scene and open an investigation into Oscar's death.

87.     Detective Sergeant Jay Barkley of the MSP recovered the knife from a black glove near the base of the tree where Chief Stolberg placed it.

88.     The knife was in an open or unfolded position, with the blade sticking out, when Detective Sergeant Barkley recovered it.

89.     Detective Sergeant Barkley ordered a member of the MSP Crime Lab to remove the knife from the black glove so it could be photographed.

90.     Detective Sergeant Barkley then ordered the knife photographed on the ground near the base of the tree.

91.     Detective Sergeant Barkley then removed the knife from the scene and brought it to the MSP Jackson Post, where he took two "swabs with potential DNA evidence" from the knife.

92.     Upon information and belief, the MSP concluded its investigation without ever having the knife recovered from the scene analyzed for potential DNA evidence.

93.     Upon information and belief, the MSP concluded its investigation without ever analyzing the swabs with potential DNA evidence.

**V.      CAUSES OF ACTION**

### Count I – 42 U.S.C. § 1983 – Fourth Amendment Violation – Excessive Force
#### (*Guadalupe Herrera v. Deputy Adam Burlew*)

94. Plaintiff restates and incorporates by reference all preceding paragraphs as though fully set forth herein:

95. 42 U.S.C. § 1983, otherwise known as the Civil Rights Act of 1871 or the Ku Klux Klan Act, provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

96. Plaintiff in this action is a citizen of the United States and the individual law enforcement Defendant to this claim, BURLEW, is a person for purposes of 42 U.S.C. § 1983.

97. Defendant BURLEW, at all times relevant to the claims in this lawsuit, was acting under the color of state law in his individual capacity as a Hillsdale County Sheriff's Deputy.

98. At the times of the events alleged herein, Plaintiff's decedent had a clearly established Constitutional right under the Fourth Amendment to be secure from unreasonable seizure of his person through excessive force.

99. The following circumstances were known to Defendant BURLEW prior to the shooting:

   i. Oscar Herrera was approximately 20 feet away from Deputy BURLEW and posed no threat of grave bodily harm or death to BURLEW at the time he was shot, regardless of whether he was armed or not;

   ii. Non-deadly force against Oscar Herrera would have been effective if used against Oscar Herrera.

   iii. Oscar Herrera had advanced and retreated when directed numerous times;

    iv.   Oscar Herrera was told by BURLEW that BURLEW was not going to shoot him;

    v.   Oscar Herrera was never threatened with deadly force and given the opportunity to retreat;

100.    Defendant BURLEW acted with excessive force by:

    i.   Using a level of force that BURLEW knew, or should have known, was excessive when he shot Oscar Herrera without proper justification;

    ii.   Using an unreasonable amount of force in relationship to the threat or force posed by Oscar Herrera, who was not resisting any lawful arrest or threatening the life or safety of any individual;

    iii.   Failing to use less dangerous means of restraint, including without limitation, chemical irritant or a Taser; and/or

    iv.   Failing to follow proper police procedures and adhere to a use of force continuum consistent with that used by law enforcement agencies in Michigan.

101.    Defendant BURLEW was not acting in an objectively reasonable manner when he drew his firearm and fired upon a man who posed no threat of harm to BURLEW, himself, or others.

102.    At the time Defendant BURLEW shot Oscar Herrera, it was not objectively reasonable to assume that he posed a physical risk of safety to BURLEW.

103.    A reasonable officer would have known that use of firearms in this circumstance, particularly with less lethal options available and trained upon Oscar Herrera to affect an arrest, constitutes unlawful excessive force.

104.     Defendant BURLEW's use of his firearm on Oscar Herrera when he was approximately more than 20 feet away is an objectively unreasonable use of excessive force.

105.     Defendant BURLEW acted with recklessness and deliberate indifference to Oscar Herrera's Fourth Amendment right to be free from excessive, life-threatening force.

106.     Oscar Herrera's injuries were the direct result of BURLEW's intentional acts in violation of and deliberate indifference to his Fourth Amendment Rights.

107.     As a result of BURLEW's unlawful conduct, Oscar Herrera suffered actual physical and emotional injuries, physical and psychological pain and suffering, death, other damages, and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

108.     As a further result of BURLEW's unreasonable and excessive use of force, Oscar Herrera's heirs and estate suffered losses, including loss of benefits and future earnings, and incurred medical and funeral bills.

109.     As a further result of BURLEW's unreasonable and excessive use of force, Oscar Herrera's heirs suffered emotional distress and mental anguish, and experienced the loss of Oscar Herrera's companionship, love, care, and protection.

110.     In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against BURLEW under 42 U.S.C. § 1983, in that the actions of BURLEW have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

111.     Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

<u>**Count II – 42 U.S.C. § 1983 –** *Monell* **–**</u>
<u>**Unconstitutional Custom Policy, or Practice**</u>
(*Guadalupe Herrera v. Sheriff Scott Hodshire*)

112.    Plaintiff restates and incorporates by reference all preceding paragraphs as though fully set forth herein:

113.    Defendant Deputy BURLEW was at all times relevant to this matter acting pursuant to the customs, policies, decisions, widespread habit, usage, or practice of the Hillsdale County Sheriff.

114.    Defendant HODSHIRE, in his official capacity as the Hillsdale County Sheriff, holds responsibility for the development and enforcement of policies and training based on those policies to ensure that his deputies carry out their policing duties within the confines of the rights guaranteed by the Fourth Amendment.

115.    Upon information and belief, Defendant HODSHIRE has failed to develop and promulgate through training and enforcement Constitutional policing policies. In particular, Defendant HODSHIRE has failed to ensure that his deputies adhere to policies that would have prevented the violations of Plaintiff's decedent's Fourth Amendment rights as alleged above.

116.    Upon information and belief, Defendant HODSHIRE violated Plaintiff's decedent's Fourth Amendment right to be free from excessive force by promulgating policies and training his deputies to apply policies that created the situation alleged above, in which the risk of grave injury to Plaintiff's decedent was increasingly escalated and ultimately resulted in a serious, life-threatening injury to Oscar Herrera.

117.    Plaintiff's and Plaintiff's decedents injuries were the direct result of Defendant HODSHIRE's omissions in violation of and deliberate indifference to Plaintiff's decedent's Fourth Amendment rights.

118.    As a result of Defendant HODSHIRE's acts and omissions in violation of

Plaintiff's decedent's Fourth Amendment rights, Oscar Herrera suffered actual physical and

emotional injuries, physical and psychological pain and suffering, death, other damages, and

losses as described herein entitling him to compensatory and special damages, in amounts to be

determined at trial.

119.    As a further result of Defendant HODSHIRE's acts and omissions in violation of

Plaintiff's decedent's Fourth Amendment rights, Oscar Herrera's heirs and estate suffered losses,

including loss of benefits and future earnings, and incurred medical and funeral bills.

120.    As a further result of Defendant HODSHIRE's acts and omissions in violation of

Plaintiff's decedent's Fourth Amendment rights, Oscar Herrera's heirs suffered emotional

distress and mental anguish, and experienced the loss of Oscar Herrera's companionship, love,

care, and protection.

121.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §

1988, pre-judgment interest and costs as allowable by federal law.

### Count III – 42 U.S.C. § 1983 – Fourteenth Amendment Violation – Failure to Provide Medical Treatment
### (*Guadalupe Herrera v. Deputy Adam Burlew*)

122.    Plaintiff restates and incorporates by reference all preceding paragraphs as though

fully set forth herein:

123.    42 U.S.C. § 1983, otherwise known as the Civil Rights Act of 1871 or the Ku

Klux Klan Act, provides that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

124. Plaintiff in this action is a citizen of the United States and the individual law enforcement Defendant to this claim, Deputy BURLEW, is a person for purposes of 42 U.S.C. § 1983.

125. Defendant BURLEW, at all times relevant to the claims in this lawsuit, was acting under the color of state law in his individual capacity as a Hillsdale County Sheriff's Deputy.

126. At the times of the events alleged herein, Plaintiff's decedent had a clearly established Constitutional right under the Fourteenth Amendment to receive adequate medical care.

127. At the times of the events alleged herein, Plaintiff's decedent had a clearly established Constitutional right under Fourteenth Amendment to be free from deliberate indifference to serious medical needs.

128. Defendant Deputy BURLEW created a substantial risk of serious harm to Plaintiff's decedent when Deputy BURLEW fired bullets into Oscar Herrera's body.

129. Defendant Deputy BURLEW knew that Oscar Herrera was alive immediately after he shot him.

130. Defendant Deputy BURLEW knew that Oscar Herrera faced a substantial risk of serious harm when he shot him.

131. Despite knowledge that Oscar Herrera faced a substantial risk of serious harm following the shooting, Defendant Deputy BURLEW violated his Constitutional rights secured by the Fourteenth amendment by the following acts and/or omissions:

      i. Failed to immediately notify dispatch that Oscar Herrera had been shot and was in need of medical aid;

    ii.   Failed to immediately render aid to Oscar Herrera by applying pressure to his gunshot wounds; and/or

    iii.   Prevented paramedics from immediately rendering aid to Oscar Herrera upon their arrival at the scene;

132.    At the times of the events alleged herein, Defendant Deputy BURLEW knew of and disregarded a substantial risk of serious harm to Plaintiff's decedent's health safety.

133.    Oscar Herrera's injuries were the direct result of Deputy BURLEW's intentional acts in violation of and deliberate indifference to his Fourteenth Amendment Rights.

134.    As a result of Deputy BURLEW's unlawful conduct, Oscar Herrera suffered actual physical and emotional injuries, physical and psychological pain and suffering, death, other damages, and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

135.    As a further result of Deputy BURLEW's deliberate indifference to Plaintiff's decedent's medical needs, Oscar Herrera's heirs and estate suffered losses, including loss of benefits and future earnings, and incurred medical and funeral bills.

136.    As a further result of Deputy BURLEW's deliberate indifference to Plaintiff's decedent's medical needs, Oscar Herrera's heirs suffered emotional distress and mental anguish, and experienced the loss of Oscar Herrera's companionship, love, care, and protection.

137.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against BURLEW under 42 U.S.C. § 1983, in that the actions of Deputy BURLEW have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

138.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

### Count IV – M.C.L. 691.1407 – Gross Negligence Not Subject to Governmental Immunity (*Guadalupe Herrera v. Deputy Adam Burlew*)

139.    Plaintiff restates and incorporates by reference all preceding paragraphs as though fully set forth herein.

140.    "Gross Negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L 691.1407(8)(a)

141.    At all times, Defendant owed a duty to Plaintiff under the Fourth Amendment of the United States Constitution and Art. I, Sect. 11 of the Michigan Constitution to not use unreasonable or excessive force in the seizure of his person, and not to act in a grossly negligent manner without concern for whether injury results, as prohibited by state law.

142.    Defendant Deputy BURLEW took the following actions that breached to above duties to Plaintiff's decedent and created a risk of serious injury to Plaintiff:

      i.   Deputy BURLEW did not leave the premises and attempt to communicate with Oscar Herrera by other means when he arrived at Oscar Herrera's home to find no uncontrolled dog on the property;

      ii.   Deputy BURLEW used deadly force and did not use less lethal force options to detain Oscar Herrera;

      iii.   Deputy BURLEW did not immediately render medical aid to Oscar Herrera after the shooting despite the fact that Oscar Herrera was unresponsive yet had a pulse immediately following the shooting

143.     Defendant Deputy BURLEW breached his above duties to Plaintiff through the following omissions:

    i.   Failing to choose the least dangerous option available to apprehend Oscar Herrera;

    ii.  Failing to request backup or support from animal control when responding to a call of an uncontrolled dog;

    iii. Failing to comply with policing policies and regulations that required the use of backup or support from animal control when responding to a call of an uncontrolled dog; and/or

    iv.  Failing to abide by policing policies and regulations that require officers to approach and engage suspects in ways that reduce the use of force and prevent the risk of injury.

144.     The above alleged reckless conduct by Deputy BURLEW demonstrates a substantial lack of concern for whether an injury resulted.

145.     As a direct result of the above-alleged reckless conduct by Deputy BURLEW, Oscar Herrera suffered actual physical and emotional injuries, physical and psychological pain and suffering, death, other damages, and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

146.     As a further result of the above-alleged reckless conduct by Deputy BURLEW, Oscar Herrera's heirs and estate suffered losses, including loss of benefits and future earnings, and incurred medical and funeral bills.

147.     As a further result of the above-alleged reckless conduct by Deputy BURLEW,

Oscar Herrera's heirs suffered emotional distress and mental anguish, and experienced the loss of

Oscar Herrera's companionship, love, care, and protection.

148.     Defendant is not immune from liability in these events because their acts and

omissions amount to Gross Negligence as defined by M.C.L 691.1407(8)(a).

149.     Therefore, Plaintiff is entitled to compensatory and special damages, in amounts

to be determined at trial.

150.     Plaintiff also requests an award of reasonable fees and costs incurred in pursuing

this action.

### Count V – Michigan State Law – Assault and Battery
### (*Guadalupe Herrera v. Deputy Adam Burlew*)

151.     Plaintiff restates and incorporates by reference all preceding paragraphs as though

fully set forth herein.

152.     Defendant Deputy BURLEW committed battery against Plaintiff's decedent by

pointing his pistol at Oscar Herrera, intending to fire his pistol at him, firing the pistol at him,

and causing severe injury and death to Plaintiff's decedent by doing so.

153.     Defendant is not entitled to immunity under the test announced in *Ross v.*

*Consumers Power Co.*, 420 Mich. 567 (1984), because he committed these acts maliciously and

with improper motive in bad faith, and/or willfully and wantonly—that is, with "an intent to

harm or, if not that, such indifference to whether harm will result as to be the equivalent of a

willingness that it does." *Odom v. Wayne Cty.*, 482 Mich. 459, 475 (2008).

154.     As the above allegations demonstrate, Defendant Deputy BURLEW acted with

such indifference to whether harm would occur by defying all reasonable policing policies and

approaching the scene of an alleged dog on the loose without requesting backup or animal control.

155.    As a direct result of the above-alleged reckless conduct by Deputy BURLEW, Oscar Herrera suffered actual physical and emotional injuries, physical and psychological pain and suffering, death, other damages, and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

156.    As a further result of the above-alleged reckless conduct by Deputy BURLEW, Oscar Herrera's heirs and estate suffered losses, including loss of benefits and future earnings, and incurred medical and funeral bills.

157.    As a further result of the above-alleged reckless conduct by BURLEW, Oscar Herrera's heirs suffered emotional distress and mental anguish, and experienced the loss of Oscar Herrera's companionship, love, care, and protection.

158.    Therefore, Plaintiff is entitled to compensatory and special damages, in amounts to be determined at trial.

159.    Plaintiff also requests an award of reasonable fees and costs incurred in pursuing this action.

**VI.    PRAYER FOR RELIEF**

Because of Defendants' above-described joint and several violations of  Plaintiff's rights under the Fourth Amendment and Michigan state law, Plaintiff seeks the following relief:

> Reasonable medical and hospital expenses;
>
> Reasonable funeral and burial expenses
>
> Reasonable compensation for Plaintiff's decedent's pain and suffering

Reasonable compensation for Plaintiff and Plaintiff's decedent's emotional and mental distress;

All damages permitted to the decedent's estate pursuant to the Michigan Wrongful Death Act.

Attorney's fees and costs, as well as pre-judgment interest pursuant to 42 U.S.C. § 1988 and applicable state laws;

Punitive damages against the individually named Defendant under 42 U.S.C. § 1983 and the applicable state laws for his actions taken maliciously, willfully, and/or with a reckless or wanton disregard of Plaintiff's rights under federal and state law;

Injunctive relief in the form of a Court Order for Defendant Hillsdale County Sheriff SCOTT HODSHIRE to develop and implement policies and training for all its sworn officers on their Constitutional duties under the Fourth Amendment to protect citizens from excessive force in the seizure of their persons;

Injunctive relief in the form of a Court Order for Defendant Hillsdale County Sheriff SCOTT HODSHIRE to terminate employment and relieve Defendant Deputy ADAM BURLEW of police powers;

Such other and further relief as this Honorable Court deems reasonable and just under the circumstances.

Respectfully Submitted,

**Dated: October 13, 2021**

By: /s/

**ROMANUCCI & BLANDIN, LLC**
Antonio M. Romanucci
Ian P. Fallon
321 N. Clark St., Ste. 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
ifallon@rblaw.net

**PITT, MCGEHEE, PALMER,**
**BONNANI & RIVERS, P.C.**
Robert W. Palmer (P31704)
Robin B. Wagner (P79408)
Attorneys for Plaintiff
117 W. Fourth Street, Ste. 200
Royal Oak, MI 48067
(248) 398-9800
rpalmer @pittlawpc.com
rwagner@pittlawpc.com

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff, Guadalupe Herrera, Individually and as Personal Representative for the Estate of Oscar Herrera, deceased, and pursuant to Federal Rule of Civil Procedure 38, respectfully requests and demands a trial by jury of all issues relative to the above cause of action.

**Dated: October 13, 2021**

Respectfully Submitted,

By: /s/

**ROMANUCCI & BLANDIN, LLC**
Antonio M. Romanucci
Ian P. Fallon
321 N. Clark St., Ste. 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
ifallon@rblaw.net

**PITT, MCGEHEE, PALMER,**
**BONNANI & RIVERS, P.C.**
Robert W. Palmer (P31704)
Robin B. Wagner (P79408)
Attorneys for Plaintiff
117 W. Fourth Street, Ste. 200
Royal Oak, MI 48067
(248) 398-9800
rpalmer @pittlawpc.com
rwagner@pittlawpc.com